20. EIHC, a successor company to Equisol, and public reporting act company, purports to be a diversified environmental services company focused on operating and acquiring privately held businesses specializing in air, water, and ground environmental support such as businesses in services, engineering, manufacturing wholesale/distribution and remediation and water treatment. Equisol is a wholly owned subsidiary of EIHC.

21. On or about December 7, 2009, EIHC acquired all the assets of Equisol, and in connection with such acquisition and immediately prior thereto, XIOM reorganized into a holding company structure, with XIOM becoming a wholly owned subsidiary of EIHC, and EIHC becoming a reporting act company (the "Transaction"). As a condition to the Equisol acquisition, EIHC and XIOM raised approximately $800,000 in capital from Plaintiffs and from another entity over $300,000 in capital for purported working capital purposes of EIHC; specifically, as described herein, to support the ongoing development and commercialization of the XIOM Technology.

**Defendants Zimbler's, Mazzone's, and Parrish's relationships with XIOM, Equisol and EIHC during the relevant period in question.**

22. Zimbler is a well-known penny stock deal-maker and principal of Keystone Capital Resources, LLC, a consultancy that purportedly provides advisory services in connection with mergers and acquisitions, capital raising on behalf of privately held companies that desire to go public through reverse merger structures, as well as penny stock reporting act companies such as EIHC and XIOM. Structural Enhancement Technologies Corp., ("SET"), successor company to Extreme Mobile Coatings Worldwide, Inc., which company was operated by Zimbler and Mazzone, was the sister

company to XIOM. Upon information and belief, Zimbler and Mazzone illegally forwarded, pumped and dumped, then reversed the stock of SET. Recently, SET changed its name to Eco-Petroleum Solutions, Inc. and, upon information and believe, the identical illegal activity is continuing. In February 2013, the stock was reversed again 500 for 1 and, upon information and belief, Zimbler and Mazzone will be the only individuals to benefit from the above described transactions.

23. Upon information and belief, Zimbler is no stranger to many of the Plaintiffs in this action. In particular, in or around the below described XIOM investments, Zimbler falsely represented to several Plaintiffs that he controlled a reverse merger deal with a privately held supplement company, MusclePharm Corporation ("MusclePharm"); specifically, Zimbler falsely claimed that he needed capital to buy the "shell", Global Dynamics Corporation, which "shell" would serve as the reverse merger vehicle for MusclePharm. Zimbler intentionally misrepresented to Hodas, that in exchange for Hodas investing $70,000 to purchase the "shell", he would receive free trading shares upon completion of the reverse merger at 7 cents a share.

24. Upon information and belief, based upon the above misrepresentations, as well as multiple other misrepresentations concerning the imminent reverse merger and high prospects of MusclePharm proffered by Zimbler that occurred in the summer of 2009, other Plaintiffs invested several hundred thousand dollars into MusclePharm. Plaintiffs were falsely promised that in exchange for their investment they would receive free trading shares at 7 cents a share.

25. In truth, however, Zimbler never had the reverse merger deal with MusclePharm and the company eventually completed its reverse merger with another shell company.

Hodas' $70,000 investment for the purchase of the "shell" was being held in an escrow account by a Florida and New York attorney, Michael Krome, who, upon information and belief, is currently serving a three year prison sentence. Michael Krome, however, illegally released the escrowed funds to an unknown third party possibly, upon information and belief, to Zimbler or MusclePharm. The other Plaintiffs' lost the bulk of their investment as a direct result of the material misrepresentations proffered by Zimbler. Zimbler in correspondence to Hodas promised to return his capital investment with interest totaling $77,000 but never complied with his false promise.

26. Upon information and belief, during the relevant period in question, Zimbler was a "key" fund raiser for XIOM having actively solicited several prospective investors, in the State of Florida and New York State including actively soliciting investment from the Plaintiffs.

27. Zimbler became Secretary and Director of EIHC on or about December 7, 2009.

28. Upon information and belief, Mazzone, a business colleague of Zimbler, and known penny stock promoter, served as the Chief Executive Officer of XIOM during the relevant period from XIOM's inception in 1998 until October 30, 2009, and, subsequently, became in December 2009, a board member of the EIHC.

29. In December 2009, at the time of the XIOM acquisition, Defendant Michael Parrish became the Chairman of the Board, Chief Executive Officer and President of EIHC.

### The Issuance of the Fraudulent Debentures to Plaintiffs Hodas, Simon and Nuszen.

30. In June 2009, Defendants Zimbler, Mazzone and, upon information and belief, others wrongfully, willfully and fraudulently solicited in New York State and the State of Florida, without any offering materials, or the required mandatory federal and state blue sky filings in either state, investment into XIOM, which company's sole asset at that time was certain patents associated with the development and commercialization of the XIOM Technology.

31. In particular, XIOM, Mazzone, and Zimbler offered the following XIOM Debenture Notes ("XIOM Notes") in the following amounts to the Plaintiffs: (i) Hodas-one XIOM Note $125,000 principle amount on June 18, 2009, (ii) Simon-two XIOM Notes $25,000 and $125,000 principle amounts, respectively, on June 10, 2009 and July 30, 2009, and (iii) Nuszen-one XIOM Note $25,000 on July 9, 2009.

32. Upon information and belief, Defendants Mazzone and Zimbler intentionally structured the XIOM Notes to include potentially usurious interest rates with the sole intent and illicit purpose of furthering their fraudulent scheme and illicit racketeering activity to intentionally, willfully and wrongfully fraudulently lure the Plaintiffs to make their respective investments in the first instance, and, significantly, design this scheme in an overarching illicit effort to protect themselves from potential enforceability of XIOM Notes by the Plaintiffs. Michael Krome, as noted earlier, the attorney currently serving a three year prison sentence, served as counsel to XIOM, and prepared and issued the XIOM Notes.

33. Upon information and belief, at the time of the issuance of the XIOM Notes Defendants XIOM, Zimbler and Mazzone were well aware that they never intended to honor any form of repayment but rather, as described more fully herein, divert the funds out of XIOM for their own ill-gotten gain.

**The Issuance of the Fraudulent Convertible Note to Plaintiff Frenkel**

34. On or about March 10, 2008 XIOM, Mazzone and Zimbler offered Frenkel a seven percent (7%) Convertible Note in the aggregate amount of $500,000 (the "Convertible Note"). The Convertible Note was scheduled to mature on March 10, 2010. The Convertible Note also provided in relevant part, that, "The Company will promptly and punctually pay to Note Holder or their nominee the interest on any of the Note held by the Note Holder without presentment of the Note."

35. In addition, and in further fraudulent inducement on the Defendants XIOM's, Mazzone's and Zimbler's part to induce Frenkel enter into the Convertible Note, the Convertible Note provided that, "the Company will authorize the issuance of and deliver to the Note Holder warrants to purchase 500,000 shares of Common Stock of the Company exercisable immediately and having a term of exercise equal to five (5) years of which fifty (50%) percent of the warrants shall have an exercise price equal to $1.50 per warrant share and fifty (50%) of the warrants shall have an exercise price equal to $1.80.

36. In addition, and in further fraudulent inducement on the Defendants XIOM's, Mazzone's and Zimbler's part to induce Frenkel enter into the Convertible Note Zimbler